ELLIS, Judge.
, This is a suit in w^ich the plaintiff is seeking to recover workmen’s compensation qs, for total and permanent disability because, of an alleged injury sustained by him on May 27, 1955. The case was duly tried and judgment rendered in favor of the plaintiff, from which judgment the defendant has appealed. '
,. It is admitted .that on the 27th of. May, 1955, while plaintiff was employed by.Barney ,E. King &, Sons, as . laborer in the construction of a building on the campus of Louisiana State University, he was struck in, the neck by a rivet from a tool known as a Remington Stud Driver resulting in the rivet becoming imbedded in the left post cervical muscles. Plaintiff was taken to Dr. Mayer in Baton -Rouge and while being examined in his office became suddenly pale and his blood pressure dropped to such an extent that the doctor immediately took him to the hospital, -believing that the physical' condition was caused by secondary *890 shock from bleeding but upon reaching the hospital he found the blood pressure had come back to normal and the color had returned to plaintiff. He testified that he diagnosed this condition as an emotional response. This testimony is important in that the basis of the District Court’s judgment was that plaintiff was suffering from traumatic neurosis as a result of the accident. Dr. Mayer, after examining the x-ray plates and noting the location of the rivet in the plaintiff’s neck, decided that no damage would be caused by permitting it to remain and unless other developments would occur it would be preferable not to remove the imbedded rivet. Although plaintiff returned to Dr. Mayer on two occasions, he was not satisfied and consulted another doctor.
He was seen by Dr. Lafferty in Bogalusa who, on August 8, surgically removed the imbedded rivet from the plaintiff’s body. The operation, according to Dr. Lafferty, was tedious and time-consurning taking about an hour and thirty minutes. On September 9th Dr. Lafferty saw the plaintiff and was of the opinion at that time that he was able to return to his work and that he had no permanent disability from the injury. Plaintiff had attempted to return to his work but only for one day following a visit to Dr. Mayer. He testified that because of his suffering he was unable to work.
The medical testimony is all to the effect that plaintiff on the date of the trial had an involuntary tremor of the head and plaintiff in his testimony described his symptoms as being a pain in his head. He stated: “My head hurt so bad I have to go somewhere and lay down practically every day, * * *. The trouble is my head. It has been unbalanced or something ever since it was cut out of me.” He also complained of being able to feel the muscles in his shoulder and back when he moved his arm up and down.
The District Court correctly found that: “The evidence shows that prior to the occurrence of this accident plaintiff was an able-bodied man, indulged in hard work without complaint, and for recreation hunted and fished. Since this accident he has failed to follow any employment and, according to the testimony, the least exertion on his part, even such as raking leaves, causes a throbbing in his head. He has refrained from going hunting or fishing since the injury because, according to his testimony, he is unable to stand the exertion. Evidence was introduced from a former co-worker, a preacher and his wife, all of whom corroborated the fact that plaintiff has not worked since the date of this injury and their testimony further describes the emotional condition in which plaintiff presently is.”
The Court also stated in its written reasons the following:
“From my observation of the plaintiff on the witness stand he has a very perceptible tremor Of his head, though he is a man of only fifty-two years of age.
“From the medical opinion expressed by the doctors who testified in the case there is no anatomical reasons that they are able to discern which would prevent plaintiff from following the same employment as that he did when injured.
“From my observation of the plaintiff on the witness stand and from the testimony of the witnesses, it is my opinion that plaintiff is not a malingerer and that the emotional disturbance from which he is suffering is real and is connected with this accident.
“Accordingly, and for these reasons, I am of the opinion that plaintiff is totally disabled from performing work of any reasonable character.”
We believe that the findings of the District Court are borne out by the medical testimony and that there is no manifest error in his findings based on this record.
Dr. Mayer, who first treated the plaintiff, as previously stated told of an unusual emotional upset suffered by the plaintiff *891 in his office and with regard to this case he testified:
“A. He was emotionally upset, Sir. And I don’t know what he did, what his work was, but the man seemed intensely agitated and I don’t think he was in fit shape at that time to return to work. It was too early for him to go back to work.”
* * * * * *
“Q. Was there anything whatsoever about the nature of the injury that Mr. Sharp sustained that would be suggestive of the cause of a mental condition or nervous condition? A. He was emotionally upset, certainly, at the time I last saw him and, as I said, he was angry at the people who worked with him and with the contractors and subcontractors on this job. Now how much would influence Mr. Sharp’s future course in his recovery, I can’t say. It is possible, and certainly possible, that he may have built up such a deep-set group feeling toward these people that it would make him agitated.
“Q. Mr. Sharp testified on the witness stand this morning his head had a noticeable tremor when he talked, which was noticed by counsel and also by the Court. Can you see any connection between the injury and such tremor of the head? A. It certainly would not be within the realm of probability. I certainly can’t say that it would be impossible as the result of a nervous condition.”
Dr. Mayer also gave the following testimony :
“A. On the 31st of May, 1955, he appeared in the office and said that he was in great discomfort in his left arm, and he was wearing á sling, complaining of swelling of the hand, although I couldn’t discern any evidence of swelling of the hand at the time, and I couldn’t understand why the sling was necessary to him but because of his complaint of pain, I permitted him to continue wearing it. I saw him again on June 3rd, 1955 and he complained of his hand being swollen and said his grip in the hand was poor, elbow and shoulder ached him severely, and I couldn’t find any evidence of diminution of grip when I checked the two hands. He was very cooperative in that. And there was no evidence of swelling of the hand. And he stated to me that he was going to see a Doctor Goutreau, in Covington, and that was the last I ever saw of him.”
The above quoted testimony would intimate very strongly a mental condition which the plaintiff, according to the testimony, had never had prior to the accident.
We also have in the record interrogatories and cross interrogatories propounded to Dr. Frederick R. Hiñe-, a specialist in the practice of psychiatry. Dr. Hine was a graduate of the Yale School of Medicine in 1949 and ably qualified by education and was a resident doctor at the time he gave his testimony at Southeast Louisiana Hospital at Mandeville, Louisiana. He stated that he had seen the plaintiff on two occasions which consumed about forty-five minutes each time. It appears that the clearest way to discuss his findings as a result of the examination is to quote same:
“It is the opinion of the writer that this patient suffers from an anxiety reaction. This is a psycho-neurotic reaction which manifests itself directly in the symptoms of ‘nervousness and shakiness’ and insomnia. These symptoms are direct manifestations of anxiety (fear). The tension headaches, of which the patient complains, are seen as a somewhat less direct manifestation of the chronic stage of increased emotional tension which is the principle feature of a'n anxiety reaction. As with all psycho-neurotic reactions the underlying or prew'dposing causes are considered to date from the patient’s childhood. It is our impression that *892 this patient’s alcoholic father, given to outburst of uncontrolled rage, has produced in the patient a tendency to react with extreme .anxiety to injury or threats of injury. In line with psychoanalytic thinking, it is our impression that this latent fear pattern, because of its. direct connection with fear of father, assumed a more specific characteristic :. the fear of penetration. The patient was able to function adequately until this pattern was triggered into action by the penetrating wound which he sustained several months ago. Thus the recent injury as seen as a precip-ating causal factor for the overt psychoneurotic symptoms but not as the entire cause of his ■ difficulties. (The writer has 'considered it.necessary to go into the rather abstruse psycho-, analytic interpretation involved in this case because it is these factors, such as the fear of penetration, which carrying hom with real conviction the relationship of present symptoms to. his injury in May, 19SS. This unsophisticated farmer could not possibly be sufficiently informed on psycho-analytic theory to fabricate this material.)
“I should like to'add that in the letter to -Mr. Talley which accompanied the- above report I stated that it should be clearly understood that no physical examination was performed by me. The conclusions contained in my report are based in part on the assumption that possible organic causes for the patient’s present .symptoms have been ruled out by his family physician.”
It is to be noted that this doctor stated that his conclusions were based in part on the assumption that possible organic causes for the patient’s present symptoms have been ruled out by his family physician. In this connection we agree with the finding of the Judge below that:
“From the medical opinion expressed by the doctors who testified in the case there is no anatomical reasons- that they are able to discern which would prevent plaintiff from following the same, employment as that he did when injured.”
There was medical testimony by Dr. Mayer that the plaintiff could have Parkinson’s disease which caused the tremor, however, this was only a suggestion on the part of this doctor. Defendant argues that it is not shown that he had Parkinson’s, disease and if he had it, that it is not shown that it was caused by the accident and injury. Defendant is correct, however, the medical testimony in this record, which is-rather brief, - supports the finding of the trial judge that the plaintiff was not a malingerer and that the emotional disturbance from which he was suffering was-real and was connected with the accident.
For the reasons assigned the Judgment of the District Court is hereby affirmed.